IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESLIE EVANS-SAMPSON,** : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-CV-0653** |
| : | |
| **PENNSYLVANIA DEPT OF** : | |
| **HUMAN SERVICES,** *et al.*, : | |
| **Defendants.** : | |

### MEMORANDUM

**PRATTER, J.**  MARCH 10, 2020

Plaintiff Leslie Evans-Sampson brings this civil action pursuant to 42 U.S.C. § 1983 against the Pennsylvania Department of Human Services, Keystone Family Health Plan, and Vista Health Plan, Inc. (ECF No. 2 at 2-3, 7.)[1] She has also filed a Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1) and a "Notice of Motion, Response Deadline and Hearing Date" (ECF No. 11) with respect to her motion for *in forma pauperis* status. For the following reasons, the Court will grant Ms. Evans-Sampson leave to proceed *in forma pauperis*, dismiss her Complaint and grant her leave to amend with respect to her state law claims.

### I. FACTUAL ALLEGATIONS

Although the precise nature of Ms. Evans-Sampson's claims are unclear, the factual allegations of the Complaint suggest that she is dissatisfied with the plan of care for home health services set up by her provider, Keystone First Community HealthChoices ("CHC") in January 2020. (ECF No. 2 at 12.) Ms. Evans-Sampson avers that she was approved for twenty-two hours of service, which she contends was an "insufficient [amount of] home health aide hours."

---

[1] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

(*Id.* at 12, 23.) Following the intake appointment for home health services, Ms. Evans-Sampson requested that the plan of care be sent to her via email, but Trenise Palmer, an employee of CHC, allegedly refused to email the plan of care to her. (*Id.*) Ms. Evans-Sampson developed her own plan of care, and emailed it to Ms. Palmer on January 21, 2020. (*Id.* at 13.) The next day, Ms. Evans-Sampson requested that two more goals be added to her proposed plan of care. (*Id.*)

On January 23, 2020, Ms. Palmer communicated to Ms. Evans-Sampson via email indicating that Ms. Evans-Sampson was authorized to receive twenty-one hours of home health services at three hours per day. (*Id.* at 14.) Ms. Palmer further advised that the "utilization and management team [would] send decision by mail." (*Id.*) It appears that in her response to Ms. Palmer's email, Ms. Evans-Sampson continued to contest the home based services determination by questioning why the decision couldn't be emailed, and asking what software and diagnosis codes were used to develop the plan of care. (*Id.* at 14-15.) Ms. Evans-Sampson also noted that she "consider[ed] the grossly inadequate treatments as retaliation for the good faith complaint [she] filed against [CHC, Ms. Palmer's] employer." (*Id.* at 15.)

On January 24, 2020, Ms. Evans-Sampson sent Ms. Palmer another email indicating that according to CHC policy, the provider was to communicate with the enrollee, *ie.*, Ms. Evans-Sampson, in the method indicated by the enrollee. (*Id.* at 16.) Ms. Palmer responded that she would have the "utilization and management team send a copy [of the decision] by email." (*Id.*) Ms. Palmer advised Ms. Evans-Sampson that she would have to wait for the decision to be advised of the available options. (*Id.*) Ms. Evans-Sampson, however, contends that Ms. Palmer should have advised her of the options because it was part of Ms. Palmer's job, and avers that by not doing so, CHC "violate[d] their own policies and procedures." (*Id.* at 17.)

2

On January 28, 2020, Ms. Evans-Sampson sent an email to Ms. Palmer and the "Executive Office of Income Maintenance" asking why "the home health aides [were] told not to give [her] rides to appoointments." (*Id.* at 18.) Ms. Evans-Sampson also advised that she had not yet received a copy of the plan of care, and noted that "several times [when she] filed a Notice of Appeal with the Court of Common Pleas," the appeal was "rejected because she did not include a Department decision." (*Id.* at 19.)

The Complaint indicates that Ms. Evans-Sampson continued to contact Ms. Palmer. On January 28, 2020, Ms. Evans-Sampson informed Ms. Palmer of her new diagnosis and questioned whether or not that would change the plan of care. (*Id.* at 20.) Ms. Evans-Sampson also requested the name of the newly assigned service coordinator, utilization and management teams's processes and contact information, and the name of the person who was reviewing the plan of care. (*Id.* at 20.) Ms. Evans-Sampson was advised that Kristine Augustine was the newly-appointed service coordinator. (*Id.* at 21.) Ms. Evans-Sampson contacted Ms. Augustine as well. (*Id.*)

On January 30, 2020, Ms. Evans-Sampson left a voicemail for an employee at the Executive Office of Income Maintenance "regarding her complaint to the Pa Dept of Insurance regarding the medical gag and the provider's refusal to disclose [plan of care]." (*Id.* at 22.) He returned her call and they agreed to reconvene on February 3, 2020. (*Id.*) On February 1, 2020, Ms. Evans-Sampson received a "hand-delivered [plan of care]" from CHC in her mailbox. (*Id.*)

Ms. Evans-Sampson asserts that the "Department, under the color of law, the Affordable Care Act, deprived [her] of her 'due process' rights when they: 1. instituted a medical gag [and] 2. failed to provide Departmental Decisions regarding her healthcare services/treatments from January 17, 2020 to February 1, 2020, outside of the timeframes allowed by the law, in

3

retaliation for making good faith claims and complaints." (*Id.* at 11.) Ms. Evans-Sampson further alleges that the "Department" delayed and interfered with medical treatments she could have received and "violated federal laws, state laws and its very own policies and procedures." (*Id.* at 11, 23.) According to a diagram contained within the Complaint, presumably prepared by Ms. Evans-Sampson, the "Department" consists of the Pennsylvania Department of Human Services, the Philadelphia County Assistance Office (Patricia Cooper), and providers (Keystone First Community Health Choices, Trenise Palmer, Kristine Augustine). (*Id.* at 10.)

Near the end of her Complaint, Ms. Evans-Sampson specifically references 18 U.S.C. §§ 241, 242, and 245, which criminalize civil rights violations. She avers that "[i]t is a federal crime to deprive someone of rights under color of law. Its [sic] a federal crime for someone to deprive a person of a federally protected activity. Its [sic] a federal crime for people to deprive a person of a right and conspire with 2 or more people." (*Id.* at 24.) Ms. Evans-Sampson requests that "these people and whomever else is a party to this [be] prosecuted under the aforementioned statutes." (*Id.*) Ms. Evans-Sampson also seeks money damages in the amount of "$1,040,000 for every treatment listed in [her plan of care] for all 16 days they instituted the medical gag/failed to provide medical decisions" and an "injunction for them not to institute medical gags in the future." (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Ms. Evan-Sampson leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is obligated to screen the Complaint to determine, among other things, whether it is frivolous or fails to state a claim. A complaint is

4

subject to dismissal under § 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Ms. Evans-Sampson is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Although the allegations are to be construed liberally, a *pro se* litigant is not excused from complying with the Federal Rules of Civil Procedure. *Lynn v. Sec'y, Dep't of Def.*, 431 F. App'x 147, 150 (3d Cir. 2011).

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short a plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

## III. DISCUSSION

### A. Claims Raised Under 42 U.S.C. § 1983

Ms. Evans-Sampson asserts that she is raising claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed below, Ms. Evans-Sampson's Complaint fails to state a claim for relief under § 1983.

#### 1. Claims Against the Pennsylvania Department of Human Services

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Eleventh Amendment immunity extends to entities that are arms of the state. *See Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (holding that the Eleventh Amendment covers "department or agencies of the state having no existence apart from the state"). As an agency of the Commonwealth of Pennsylvania, the Department of Human Services is entitled to Eleventh Amendment immunity and does not constitute a "person" for purposes of § 1983. *See Summers v. PA Dep't of Human Servs.*, Civ. A. No. 18-3652, 2018 WL 4169046, at *2 (E.D. Pa. Aug. 29, 2018) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that states are not "persons" under § 1983 and therefore may not be sued in federal or state court under that statute); *Biesecker by Biesecker v Cerebral Palsy Ass'n, Chester Cty. Disabilities Servs.*, Civ. A. No. 17-2586, 2018 WL 3416384, at *6-7 (E.D. Pa. July 13, 2018)). Accordingly, Ms. Evans-Sampson cannot maintain her claims against the Pennsylvania Department of Human Services.

### 2. Claims Against Keystone Family Health Plan and Vista Health Plan, Inc.

Keystone Family Health Plan and Vista Health Plan, Inc. appear to be a non-state actor entities.[2] Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Ms. Evans-Sampson has not alleged facts to support a plausible conclusion that either of these named Defendants meet any of the foregoing tests; therefore, she has failed to establish that either of them are state actors. *See Kovach v. Coventry Health Care, Inc.*, Civ. A. No. 10-0536, 2011 WL 284174, at *4 (W.D. Pa. Jan. 25, 2011) (concluding that defendants who sold health insurance products including Medicare Advantage were not state actors; "the fact that Defendants are licensed by the state and subject to state regulation simply does not convert their actions into that of the state for purposes of the Fourteenth Amendment"); *see also Schutt v.*

---

[2] Ms. Evans-Sampson does not allege how Vista Health Plan, Inc. was involved in the events giving rise to her claims. However, she provides the same address for Keystone Family Health Plan and Vista Health Plan, Inc. It appears that Vista may be the corporation that operates the plan in which Evans-Sampson enrolled.

7

*Melmark, Inc.*, 186 F. Supp. 3d 366, 376 (E.D. Pa. 2016) (concluding that a residential treatment center was not a state actor despite receipt of state funding); *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (rejecting argument that nursing homes were state actors in light of "state subsidization of the operating and capital costs of the facilities, payment of the medical expenses of more than 90% of the patients in the facilities, and the licensing of the facilities by the State"); *Klavan v. Crozer–Chester Med. Ctr.*, 60 F.Supp.2d 436, 443 (E.D. Pa. 1999) ("[D]efendants' receipt of government funding, even if combined with [extensive regulation], does not render defendants state actors, regardless of which test we employ."). Accordingly, these entities are not subject to suit under § 1983.

### B. Claims Raised Pursuant to Criminal Statutes

There are other problems with Ms. Evans-Sampson's Complaint. It appears that Ms. Evans-Sampson is attempting to initiate criminal charges against the Defendants and/or that she is seeking relief under criminal statutes. (ECF No. 2 at 23-24.) However, the criminal statutes to which Ms. Evans-Sampson refers do not provide a basis for civil liability and, furthermore, this Court lacks the authority to initiate criminal proceedings. *See Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (per curiam) ("[T]hese criminal statutes [18 U.S.C. §§ 241 and 242] provide no private right of action for use by a litigant such as Colon–Montanez."); *see also Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 n.1 (3d Cir. 2013) (per curiam) ("[T]here is no federal right to require the government to initiate criminal proceedings." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 636 (E.D. Pa. 2014) ("[F]ederal courts lack the power to direct the filing of criminal charges."), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (per curiam). Accordingly, any claims brought pursuant to criminal statutes will be dismissed.

8

## C. State Law Claims

Ms. Evans-Sampson appears to be raising state law claims against the named Defendants. Because the Court has dismissed her federal claims, the Court will not exercise supplemental jurisdiction over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

An individual is a citizen of the state where she is domiciled, meaning the state where she is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) A corporation is a citizen of the state in which it was incorporated as well as where it has its principal place of business. *See* U.S.C. § 1332(c)(1). "[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of its partners or members." *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420. "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In some cases, "a plaintiff may allege that the defendant is *not* a citizen of the plaintiff's state of citizenship" after conducting a reasonable investigation into the defendant's citizenship. *Id.* at 107-08.

Although Evans-Sampson has not explicitly specified, it appears that she is likely a citizen of New Jersey as she has listed her mailing address as Trenton. (ECF No. 2 at 2.) The citizenship of Keystone Family Health Plan and Vista Health Plan, Inc., is not alleged in the Complaint; Ms. Evans-Sampson has merely listed the mailing address of both named Defendants as Philadelphia, Pennsylvania in her Complaint.[3] Ms. Evans-Sampson's allegations do not explicitly reveal the Defendants' citizenship for purposes of plausibly establishing diversity. She has failed to meet her burden of demonstrating that this Court has subject matter jurisdiction over any state law tort claims she may be raising, and the Court will dismiss any state claims on that basis. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp.*, 547 U.S. at 342 n.3).

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Ms. Evans-Sampson's federal claims for failure to state a claim and her state law claims for lack of subject matter jurisdiction. Ms. Evans-Sampson's federal claims will be dismissed with prejudice because amendment of those claims would be futile. The dismissal of her state law claims is without prejudice to Ms. Evans-Sampson filing an amended complaint in this case in the event she can allege a basis for subject matter jurisdiction or, alternatively, filing a complaint in state court so she may proceed on her state law claims in that venue. An appropriate Order follows.

**BY THE COURT:**

_____
**GENE E. K. PRATTER, J.**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court notes, as should Ms. Evans-Sampson, that the Pennsylvania Department of Human Services, as an agency of the Commonwealth entitled to Eleventh Amendment immunity, would also be immune from any state law claims.